**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    FOR PUBLICATION
-------------------------------------------------------X
In re:

                                                      SIPA LIQUIDATION
BERNARD L. MADOFF INVESTMENT                          No. 08-01789 (BRL)
SECURITIES LLC,

                                                      (Substantively Consolidated)


                          Debtor.
-------------------------------------------------------X
DIANE PESKIN, ET AL.,
                                                      Adv. Pro. No. 09-01272 (BRL)
                          Plaintiffs,

              v.

IRVING H. PICARD, as Trustee for the
Liquidation of BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,


                          Defendant.
-------------------------------------------------------X


APPEARANCES:

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
By:    David J. Sheehan
       Marc E. Hirschfield
       Oren J. Warshavsky
       Seanna R. Brown

*Attorneys for Defendant Irving H. Picard,*
*Trustee for the Substantively Consolidated SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

SECURITIES INVESTOR PROTECTION CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
Facsimile:  (202) 371-6728
By:    Josephine Wang, General Counsel

*Attorneys for the Securities Investor Protection Corporation*

PHILLIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Telephone: (212) 841-1320
Facsimile:  (212) 262-5152
By:     Helen Davis Chaitman

*Attorneys for Plaintiffs Diane and Roger Peskin and Maureen Ebel*

MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
By:     Jonathan M. Landers
        Matthew Gluck
        Lois F. Dix
        Joshua E. Keller

*Attorneys for Intervenors Dr. Gerald Blumenthal, Robert Horowitz, Lester Kolodny, and Paul J. Robinson*

Before: Hon. Burton R. Lifland
         United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER GRANTING TRUSTEE'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

With more than 15,000 claims filed in the Madoff proceeding and multi-billions of dollars at stake, the issue of how the Trustee determines claimants' "net equity" for distribution purposes is a central question to be determined in this SIPA liquidation.

Before this Court is the motion ("Motion to Dismiss") brought by defendant Irving H. Picard, trustee ("Trustee" or "Defendant") for the substantively consolidated Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff (collectively, "Debtors") seeking to dismiss the complaint (the "Complaint") filed by plaintiffs Diane Peskin, Roger Peskin, and Maureen

---

[1] Subsequent references to SIPA shall omit "15 U.S.C."

Ebel (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure, or in the alternative, to strike certain portions of the Complaint. Trustee asserts that the Complaint should be dismissed because (1) it violates this Court's order of December 23, 2008 (the "Claims Procedure Order" or the "Order");[2] 2) Plaintiffs lack standing to bring the current application; 3) Plaintiffs' claims with regard to preferences and breach of fiduciary duty fail as a matter of law and are currently moot; and 4) Plaintiffs' counsel is operating under a conflict of interest.[3] Significantly, the Trustee's Motion to Dismiss did not seek to resolve the issue of how net equity should be determined. In addition to the Securities Investor Protection Corporation ("SIPC"), a number of customers of Bernard L. Madoff Investment Securities LLC ("BLMIS"), who were also victims of Madoff's Ponzi scheme and whose interests are aligned in many ways with the Plaintiffs, fully support the Trustee's Motion to Dismiss,[4] and generally express a preference to have the issues determined in accordance with the procedures established in the pending scheduling motion[5] (see *infra* at Section III, subsection a, "The Scheduling Motion").

The Complaint seeks declaratory relief and damages for breach of fiduciary duty. Plaintiffs seeks declarations that 1) Trustee is obligated to recognize Plaintiffs' claims based on their November 30, 2008 account balances (the "Net Equity Issue"); 2) Trustee has no right to

---

[2] Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief, filed on December 23, 2008 (Adv. Pro. No. 08-01789, Docket # 12).

[3] This Court is on notice of the Trustee's (and SIPC's) allegations that Plaintiffs' counsel is operating under a conflict of interest because she not only represents individual customers with conflicting interests but has also filed her own objection to the claims determination for an account in which she has a personal interest.

[4] Dr. Gerald Blumenthal, Robert Horowitz, Lester Kolodny, and Paul J. Robinson (collectively, the "Customers") filed a Memorandum of Law in Support of Their Motion to Be Heard on Trustee's Motion to Dismiss and on the Net Equity Issue in Adversary Proceeding No. 09-1272 ("Customers' Motion to Intervene"), along with a Statement in Support of Trustee's Motion to Dismiss.

[5] This Court has approved the Trustee's scheduling motion as modified per the record of the hearing held on September 9, 2009.

seek recovery of preferences received within 90 days of the institution of this proceeding; and 3) the Court must void the Partial Assignment and Release executed by Mrs. Ebel. Plaintiffs seek compensatory damages against the Trustee for the losses Plaintiffs have suffered due to Picard's alleged failure to promptly pay their claims in breach of his fiduciary duty.

At bottom, the Complaint is essentially seeking an accelerated resolution of the Net Equity Issue and more specifically, seeking a declaration that net equity should be determined by looking at customers' account balances as of November 30, 2008. The thrust of the Trustee's Motion to Dismiss is that the Complaint violates the Claims Procedure Order, which has been established to address the exact issues and provide the same relief as that sought in the adversary proceeding. In response to Plaintiffs' assertion that customer claims should be allowed in the amount shown on the November 30, 2008 BLMIS statements, the Trustee contends that the "cash in/cash out" approach[6] should be employed instead because fictitious profits should not compete with claims based on real money invested with BLMIS. Upon a complete review of the record, the Trustee's Motion to Dismiss is hereby granted.

## BACKGROUND

### I. Procedural History

The Complaint arises in connection with the infamous Ponzi scheme perpetrated by Bernard L. Madoff through his investment company, BLMIS. On December 11, 2008, Madoff was arrested by federal agents and charged with securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, in the United States District Court for the Southern District of New York ("District Court"). *United States v. Madoff*, No. 08-MJ-02735. That same

---

[6] The Trustee is allowing claims in the amount that a customer actually deposited with BLMIS minus the amounts that the customer withdrew from the account, often referred to as the "cash in/cash out" approach.

day, the Securities and Exchange Commission (the "SEC") filed a civil complaint in the District Court, alleging, *inter alia*, that Madoff and BLMIS were operating a Ponzi scheme through BLMIS's investment advisor activities. *S.E.C. v. Madoff, et al.,* No. 08-CV-10791 (the "Civil Action").

On December 15, 2008, SIPC filed an application in the Civil Action seeking a decree that the customers of BLMIS are in need of the protections afforded under SIPA. The District Court granted the SEC's application and entered an order on December 15, 2008, placing BLMIS's customers under the protections of SIPA (the "Protective Order"). The Protective Order appointed Defendant as trustee for the liquidation of the business of BLMIS and removed the SIPA liquidation proceeding to this Court pursuant to SIPA § 78eee(b)(3) and (b)(4), respectively.

On March 12, 2009, Madoff pled guilty to an 11-count criminal indictment filed against him and admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." *See United States v. Madoff*, No. 09 CR 213 (DC), Docket NO. 57, Plea Hr'g Tr. at 23:14-17. On June 29, 2009, Madoff was sentenced to 150 years in prison.

## II.     Plaintiffs' Customer Claims Filed with the Trustee

Diane and Roger Peskin and Maureen Ebel are customers of BLMIS and have filed the current application, seeking declaratory judgment and compensatory damages, in connection with customer claims that they have already filed with the Trustee. The following Plaintiffs' "account" background is essentially undisputed.

### a.  The Peskin Account

Diane and Roger Peskin are investors in BLMIS. On or about October 18, 2005, the Peskins invested $2,586,412.99 into a BLMIS account. In early May 2008, the Peskins invested

approximately $181,000 therein. In the ordinary course, the Peskins regularly withdrew funds from that account.

On or about September 15, 2008, the Peskins received a check from BLMIS for $50,000, which cleared their account on or about September 17, 2008. On or about October 1, 2008, the Peskins received a check from BLMIS for $33,000. On or about November 6, 2008, the Peskins received a check from BLMIS for $30,000. On or about November 12, 2008, the Peskins invested $470,265.98 into their BLMIS account.

The Peskins filed a SIPC claim in February 2009. Plaintiffs allege that they were contacted on June 3, 2009 by one of the Trustee's attorneys who informed them that they were entitled to receive $387,000 as their full SIPC payment because the Trustee was entitled to deduct the $113,000 that they withdrew from their BLMIS account in the 90-day preference period. Plaintiffs assert that they pointed out to the attorney that although they had withdrawn $113,000 from their BLMIS account during the preference period, they had also invested $470,265.98 with BLMIS on November 12, 2008, constituting the infusion of new value. As such, their net position in the last 90 days before the SIPA liquidation was positive $357,265.98. They asked the attorney if they weren't entitled to the full $500,000 SIPC payment since they had invested more than they withdrew in the last 90 days. Plaintiffs claim that they were told that the law was clear that they were not entitled to credit for the money they deposited.

By letter dated June 26, 2009, the Trustee acknowledged that the Peskins did not receive any preference payments and were therefore entitled to the full $500,000 SIPC payment. As a result, on or about July 16, 2009, the Trustee sent the Peskins a Notice of Trustee's Determination of Claim (the "Notice") and a Partial Assignment and Release in the amount of $2,310,191.25, which reflected the amount of money deposited with BLMIS, less subsequent

withdrawals. The Notice informed the Peskins that upon execution of the Assignment and Release, the Trustee would make a partial satisfaction of the allowed claim by sending the Peskins a check for $500,000, with the funds advanced by SIPC. On August 8, 2009, the Peskins received the check for $500,000.[7]

### b. Mrs. Ebel's Accounts

Maureen Ebel is a Madoff investor who opened two BLMIS accounts. The first account she opened was a direct IRA account. On or about February 24, 2003, Mrs. Ebel invested $1,348,877.12 therein. Mrs. Ebel never withdrew any money from this account. On November 30, 2008, it reflected a balance of $2,532,140.66.

The second account Mrs. Ebel opened was a direct investment account in which she invested a total of $3,831,387.49 beginning on or about March 17, 2003 and ending on or about July 23, 2004. Mrs. Ebel regularly withdrew funds from this account. On or about September 15, 2008, Mrs. Ebel received a check from BLMIS dated September 11, 2008 in the amount of $102,000, which she deposited in her account that day. As of November 30, 2008, the balance reflected on this account was $4,729,125.04.

Mrs. Ebel filed her SIPC claim for both accounts in February 2009. On or about May 20, 2009, the Trustee sent Mrs. Ebel a Notice of Trustee's Determination of Claim and a Partial Assignment and Release with regard to her IRA account, allowing her claim in the amount of $1,348,877.12, which reflected the amount of money deposited with BLMIS[8]. On or about June 6, 2009, she received a check from SIPC for $500,000 with respect to this account. On or about May 22, 2009, the Trustee sent Mrs. Ebel another Notice of Determination with regard to her

---

[7] Although not alleged in the Complaint, the Peskins claim for the first time in their Opposition brief that they are entitled to a SIPC payment of $1,000,000 instead of $500,000. (See Plaintiffs' Memorandum of Law in Support of their Opposition to the Trustee's Motion to Dismiss, at p. 19).

[8] Mrs. Ebel never withdrew any funds from this account.

direct investment account, allowing her claim in the amount of $2,290,387.49, which reflected the amount of money deposited with BLMIS less withdrawals. The Notice of Determination also informed Mrs. Ebel that upon execution of the Assignment and Release, the Trustee would make a partial satisfaction of the allowed claim by sending her a check for $398,000, with the funds being advanced by SIPC. The reduction in the SIPC advance represented an offset of the $102,000 withdrawal from Mrs. Ebel's account that cleared on September 16, 2008, within the 90-day preference period. On or about June 9, 2009, the Trustee sent Mrs. Ebel a second Notice of Trustee's Determination of Claim and a revised Partial Assignment, reflecting that she could accept the $398,000 while reserving her rights as to the disputed portion of the SIPC advance. According to Mrs. Ebel, she had not received the check for $398,000 as of the filing of Plaintiffs' Opposition brief. According to the Trustee, Mrs. Ebel has now been paid the $500,000 SIPC advance with respect to her direct investment account, thereby totaling a $1 million SIPC advancement for her two accounts.

**DISCUSSION**

## I.      Rule 12(b)(6) of the Federal Rules of Civil Procedure

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, the factual allegations in a complaint may not be supported by mere conclusory statements. Rather, they must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "[O]nly a complaint that states a plausible claim for relief survives a motion to

dismiss." *Iqbal*, 129 S.Ct. at 1950. For the following reasons, the Complaint fails the survivability test.

## II.    The Claims Procedure Order

On December 23, 2008, this Court approved the Claims Procedure Order, which sets forth a methodical and systematic framework for the filing, determination and adjudication of claims in the BLMIS liquidation proceeding. The procedures therein have been consistently approved and utilized in SIPA proceedings since its enactment in 1970.[9] Pursuant to this order, all claims by customers must be filed with the Trustee. (Order at 3; SIPA at § 78fff-2(a)(2)). The Trustee satisfies customer claims by allocating customer property supplemented by SIPC advances. (Order at 5; SIPA at § 78fff-2(b)). If the Debtors' books and records fail to support a claim or the claim is not otherwise established to the Trustee's satisfaction, he may deny it and is obligated to notify the claimant of the determination in writing (the "Trustee Determination"). If the claimant does not object to the Trustee Determination, it is deemed approved by the Court and binding on the Claimant. If the claimant objects and files an opposition, the Trustee must obtain a hearing date and notify the claimant thereof. (Order at 6-7). The Trustee may decide to settle the claim, if appropriate. (Order at 6). This process provides a practical and efficient way to resolve a large number of claims without burdening the court or draining its resources. The Trustee can resolve most of the claims, leaving only those incapable of resolution for this Court.

---

[9] *See e.g., Secs. Investor Prot. Corp. v. Saxon Secs. Corp.*, 1975 WL 444 (S.D.N.Y. 1975) (applying claims procedure substantially similar to one entered here); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 275-76 (Bankr. S.D.N.Y. 1999) (setting forth claims process and relevant order substantially similar to one entered here); *In re A.R. Baron Co., Inc.*, 226 B.R. 790, 792-93 (Bankr. S.D.N.Y. 1998) (same); *In re Adler Coleman Clearing Corp.*, 211 B.R. 486, 490 (Bankr. S.D.N.Y. 1997) (same).

**III.  Portion of Plaintiffs' Complaint Related to the Net Equity Issue ("Count I") Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Violates the Claims Procedure Order.**

Plaintiffs' chose to seek declaratory relief in connection with the Net Equity Issue through the institution of an adversary proceeding in this Court.  Yet, Plaintiffs, like all other customers, must adhere to the procedures set forth in the Claims Procedure Order because (i) the Order plainly applies to Plaintiffs' claim in Count I of the Complaint; (ii) the Order does not harm Plaintiffs as it provides for the same relief, if warranted, as that sought in the Complaint; and (iii) Plaintiffs' failure to follow the procedures is fundamentally unfair to other objecting customers and allowing such conduct to proceed would wreak havoc on the claims adjudication process.  Accordingly, Count I of Plaintiffs' Complaint is in direct contravention of the Claims Procedure Order[10] and must therefore be dismissed pursuant to Rule 12(b)(6).

First, the Claims Procedure Order clearly applies to Count I of the Complaint because Count I relates to the Trustee's determination of Plaintiffs' customer claims.  Courts have a duty to enforce their orders and ensure that all parties under their jurisdictions follow them.  *Negron-Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008) citing *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005) ("[U]nless and until a clear and unambiguous order is amended or vacated . . . a court must adopt, and give effect to, [the order's] plain meaning.").  Therefore, it is this Court's responsibility to require Plaintiffs to adhere to the claims determination process that is already in place.[11]

---

[10] Although the principal moving party, the Trustee, has not raised this issue, SIPC has pointed out that the filing of the Complaint violates the stay imposed by the District Court Order, dated December 15, 2008, which placed BLMIS in liquidation and removed the liquidation proceeding to this Court.  (*S.E.C. v. Madoff, et al.*, No. 08-CV-10791, Docket # 4).  In relevant part, under SIPA section § 78eee(b)(2)(B)(i), the District Court ordered "any other suit against any . . . trustee of the Defendant . . . is stayed." (Order, p. 3 ¶ V).  In the absence of a request for modification of the stay, SIPC asserts that this action should not be permitted to proceed.  In view of this Court's dismissal determination on other grounds, there is no need to reach the issue of a stay violation.

[11] As a side note, the procedures set forth in the Order do not seem difficult to follow as evidenced by the many customers who have received claim determinations from the Trustee and have objected in accordance with the

Second, Plaintiffs are not prejudiced by comporting with the Order because the relief sought in Count I is exactly the relief available to the Plaintiffs under the Order. Plaintiffs can argue the same points, allege the same facts, and obtain the same result by following these procedures. Nonetheless, Plaintiffs have ignored this Court's Order and failed to demonstrate that there is any sound basis for the institution of an adversary proceeding. In a case with substantially similar facts, also within the context of a SIPA liquidation, the United States District Court for the District of New Jersey granted the Trustee's motion to dismiss the adversary proceeding on the basis that the Trustee should be able to "consider the merits of [the creditor's] claim in the normal course [of] the claims process previously established in the [claims procedure] order." *In re Bevill, Bresler & Schulman, Inc.*, No. 85-1728 (D.N.J. May 22, 1989).[12] Similarly, the Plaintiffs here may not preempt the Claims Procedure Order by bringing an adversary proceeding.

Third, and most importantly, Plaintiffs' failure to comply with the Order is fundamentally unfair to other customers and permitting such a course of action would lead to an unwieldy process of adjudicating claims. With regards to fairness, the filing of this suit is unjust as it appears to be Plaintiffs' way to jump the line and obtain priority of their claims over the claims of other customers. "[I]nstead of standing in line with other claimants, the Plaintiffs have chosen to rush to judgment, thereby muddying the framework of the claims process." (SIPC Memo of Law in Support at p. 9). The Customers voiced this same deep concern "about the unfairness of permitting the Peskin Plaintiffs to effectively short circuit the claims process and jump the gun to

---

Order's procedures. Among these objectors is Plaintiffs' counsel herself, who filed objections on behalf of her own personal account, and on behalf of clients she represents.

[12] The order dismissing the complaint in *In re Bevill* is not reported. Nonetheless, the procedural history above is discussed in a subsequent opinion, a copy of which was provided to this Court as Exhibit A to the Declaration of David J. Sheehan in Support of Motion to Dismiss the Peskin Complaint, or, in the Alternative, to Strike.

obtain a resolution, when other customers have followed the rules." (See Customers' Statement in Support of Trustee's Motion to Dismiss at pp. 7-8). These Customers, who were also deceived and suffered the same misfortunes as the Plaintiffs, if not worse, have therefore urged this Court " to require that all customers play by the same rules to determine the critical net equity issue." (*Id.* at p. 8).

With respect to wreaking havoc on the claims adjudication process, condoning this type of conduct will not only invite a "chaotic race to the courthouse" by other customers, *Secs. Investor Prot. Corp. v. S.J. Salmon & Co., Inc.*, No. 72 CV 560 (Bankr. S.D.N.Y. June 1, 1972), but will also lead to an enormous drain on the Trustee's resources. To date, the Trustee has received over 15,000 claims. If each customer decided to file a lawsuit instead of an objection to the Trustee Determination, the claims adjudication process would become cumbersome, ungainly and unmanageable and would lead to the expenditure of an unfathomable amount of judicial resources. The Trustee would be forced to divert substantial resources to the task of defending against this and other similar cases in court, while simultaneously litigating with customers and creditors within the confines of the Claims Procedure Order. In other words, an "avalanche of similarly disruptive suits" would descend upon the Court if Plaintiffs were allowed to proceed. (SIPC Memo of Law in Support at p. 9). However, in an effort to expedite the resolution of the Net Equity Issue in an efficient manner while affording <u>all</u> claimants the opportunity to be heard, the Trustee has proposed a briefing schedule (the "Scheduling Motion") on the Net Equity Issue.

### a.  The Scheduling Motion

The Trustee has recently submitted the Scheduling Motion, which is an amplification of the Claims Procedure Order and establishes a procedural framework to allow all parties in interest to participate in the litigation of the Net Equity Issue. The Scheduling Motion will address the concerns of a variety of customers with different account histories and balances,

including both net winners and net losers, and will provide everyone involved with the benefits from the submission of a comprehensive and complete record on this issue. Allowing Plaintiffs, who represent only one group of customers (namely, the net losers), to proceed with the adversary proceeding to determine the Net Equity Issue that will apply to all customer claims will yield an incomplete record that might result in piecemeal litigation on this issue. Moreover, Plaintiffs' will suffer no prejudice in having the Net Equity Issue decided pursuant to the Scheduling Motion while other customers will suffer great harm if Plaintiffs are permitted to proceed without their participation.

Five responses to the Scheduling Motion have been filed by various parties (collectively, the "Responses"). Specifically, responses were filed on behalf of the following parties: (i) the James H. Cohen Special Trust and its nine beneficiaries (the "Trust Respondents"); (ii) Mary Albanese, the Brow Family Partnership, Allan Goldstein, Laurence Kaye, Suzanne Kaye, Rose Less and Gordon Bennett (the "Class Action Respondents"); (iii) Martin Rappaport, Paul J. Robinson, Judith Rock Goldman, Anita Karimian and Albert J. Goldstein U/W FBO Ruth E. Goldstein TTEE (the "Rappaport Respondents"); (iv) Marsha Peshkin IRA, Michael Mann, and Barry Weisfeld (the "Weisfeld Respondents") and (v) James Newman, *pro se* (collectively, the "Respondents"). Aside from the Class Action Respondents, who oppose the Scheduling Motion,[13] the other Respondents support in large part the procedures set forth therein and only offer slight modifications.

---

[13] The Class Action Respondents oppose the Scheduling Motion and seek to have the Net Equity Issue decided within the context of their putative class action adversary proceeding instead. This Court finds no merit to this objection because, *inter alia*, litigation on the merits on behalf of a class should only proceed if, and after, a class is certified, which has not yet taken place (putative members of the class may or may not be homogenous), and to postpone resolution of the Net Equity Issue until after class discovery and certification briefing is concluded would unduly delay adjudication of this issue to the detriment of all customers.

Upon consideration of the filed Responses, the Trustee submitted a revised scheduling order (the "Revised Order"), which attempts to modify the original Scheduling Motion. It limits the scope of the Net Equity Issue by excluding discussion of certain ancillary matters[14] but permitting the discussion of other ancillary matters.[15]

In light of the filed Responses, the Trustee's Revised Order, a complete review of the record and arguments heard at the hearing of September 9, 2009, it is in the best interests of all customers for this Court to limit the Net Equity Issue to the determination of the definition of net equity (cash in/cash out vs. account statement balance as of November 30, 2008 vs. cash in plus interest minus cash out), without any ancillary matters, in accordance with a final scheduling order (the "Final Scheduling Order"), to be submitted to this Court in due course. Narrowing the briefing schedule in this manner will most efficiently and expeditiously resolve this key issue. Ancillary matters raised by various parties will be the subject of separate scheduling orders, similar to the protocols established in the Final Scheduling Order. To the extent that the Responses are not in accordance with the Final Scheduling Order, they are overruled. In recognition of the Claims Procedure Order and in approving the Final Scheduling Order, Count I of Plaintiffs' Complaint must be dismissed.[16]

---

[14] These ancillary matters include (i) transfers from a former to a current BLMIS customer; (ii) BLMIS accounts with more than one owner; and (iii) BLMIS accounts held in the name of feeder funds.

[15] These ancillary matters include, but are not limited to, (i) the effect of the knowledge a customer may have had about the operation of BLMIS; (ii) the Trustee's avoidance powers; and (iii) the effect on a determination where the BLMIS customer account history includes a transfer from another account at BLMIS.

[16] As per the Trustee's request in his Memorandum of Law in Support of his Motion to Dismiss, this Court will allow this adversary proceeding to be converted into an objection on Mrs. Ebel's behalf, which would be deemed filed the date of the filing of the adversary proceeding.

## IV. Plaintiffs' Claims With Regard To Preferences And Breach Of Fiduciary Duty Should Also Be Dismissed.

Besides the Net Equity Issue, Plaintiffs' Complaint essentially contains two other claims. The first is for a declaratory judgment that the Trustee may not assert preference claims against Plaintiffs or deduct preferences from their SIPC advances ("Preference Claim"). The second is for compensatory damages against the Trustee for breach of his fiduciary duties by failing to promptly pay Plaintiffs' SIPC advances of $500,000 ("Breach of Fiduciary Duty Claim").

### a. Preference Claim ("Count II")

The Complaint seeks a declaratory judgment that the Trustee is not permitted to assert preference claims against Plaintiffs or deduct such amounts from their SIPC advances. The Trustee alleges that Plaintiffs' Preference Claim has been rendered moot since the Complaint was filed because the issue has been resolved. First, with respect to the Peskins, the Trustee acknowledges that they never received a preferential transfer. Second, with respect to Mrs. Ebel, the Trustee asserts that he recently paid her the full $500,000 SIPC advance, despite her receipt of a transfer during the preference period. As such, the Trustee believes that there is no more relief that Plaintiffs can obtain with regard to Count II. This Court finds that the Preference Claim is not ripe. It should be dealt with either under its own separate briefing schedule (see *supra* at Section III, subsection a, "The Scheduling Motion") or, if and when Plaintiffs bring a preference action, under the Bankruptcy Code. Accordingly, the Preference Claim is dismissed.

### b. Breach of Fiduciary Duty Claim ("Count III")

Plaintiffs' claim for breach of fiduciary duty should be dismissed because it is premature. Plaintiffs have alleged breach of fiduciary duty claims relating to the alleged failure of the

Trustee to promptly pay the SIPC advances[17] and his "invention" of a new definition of net equity.[18]  In light of entry of the Scheduling Motion, Plaintiffs' claim for breach of fiduciary duty is not yet ripe.  Given that the Plaintiffs' fiduciary duty claim hinges on resolution of the Net Equity Issue, it is only logical that this Court resolve the Net Equity issue first.  In other words, whether the Trustee has breached a fiduciary duty cannot be decided until the appropriateness of the net equity methodology is resolved.[19]  Accordingly, this Court will dismiss this portion of the Complaint without prejudice with leave to refile pending the outcome of the Net Equity Issue determination.[20]

## CONCLUSION

For the reasons set forth below and at oral argument, the Trustee's Motion to Dismiss is hereby granted with respect to Counts I and II of the Complaint.  With respect to Count III, the Motion to Dismiss is granted without prejudice to refile pending the outcome of the Net Equity Issue.  In granting the Trustee's Motion to Dismiss, this Court is simultaneously adopting the Final Scheduling Order with regard to resolution of the Net Equity Issue.  In addition, the Customers' Motion to Intervene is granted.

IT IS SO ORDERED.

---

[17] It should be noted that at the September 9, 2009 hearing, it was revealed that the Trustee has already disbursed some $350 million to claimant customers following the March and July expiration of the claims filing bar dates.

[18] Most recently, a form of the net investor method (cash in/cash out) has been considered by the District Court (*see S.E.C. v. Byers*, No. 08 Civ. 7104 (Chin, D.J.), 2009 WL 2185491 (S.D.N.Y. July 23, 2009)).

[19] Even assuming *arguendo* that this Court finds that the Trustee employed the incorrect net equity definition, such a finding does not necessarily amount to a ruling that the Trustee has breached his fiduciary duty.

[20] Plaintiffs have also sought a declaration that Mrs. Ebel is entitled to void the partial assignment and release she executed with regard to Account No. 1ZR318, alleging that the Trustee is not entitled to require her to sign a release as a condition of receipt of property.  As this is contradicted by the plain terms of SIPA, this argument fails as a matter of law.  See § 78fff-2(b) of SIPA ("Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to execute . . . releases[] and assignments").

The parties shall contact chambers to schedule separate briefing schedules to deal with those ancillary matters raised by parties to the Scheduling Motion (see Transcript of Hearing on September 9, 2009). The Trustee is directed to settle the Final Scheduling Order consistent with this decision on all interested parties.

Dated: New York, New York
        September 10, 2009

                                        /s/ Burton R. Lifland
                                        UNITED STATES BANKRUPTCY JUDGE